UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN LARRY SUMRALL, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 22-2622 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | * | SECTION "G" (2) |

## REPORT AND RECOMMENDATION

Pursuant to § 405(g) of the Social Security Act ("the Act"), Plaintiff John Larry Sumrall, Jr. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II and Part A of Title XVIII of the Act and Supplemental Social Security ("SSI") under Title XVI of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.     PROCEDURAL HISTORY

Plaintiff John Larry Sumrall, Jr. is now a 45-year-old man who filed an application for DIB and SSI alleging disability commencing on February 17, 2017.  ECF No. 18-5 at 15-16, 22-27. His relevant work history includes employment as a termite technician, materials handler, and merchandise stocker.  ECF No. 18-6 at 18.    His age classification is that of a "younger person." 20 C.F.R. § 404.1563(c).  He alleges disability due to, *inter alia*, post-surgical rib pain, pulmonary issues, nerve pain, and difficulty breathing.  ECF No. 18-6 at 7.  Although Plaintiff did not report migraine headaches as a physical condition that limits his ability to work on his initial disability

---

[1] 42 U.S.C. §§ 405(g).

report (*see* ECF No. 18-6 at 7), his counsel informed the ALJ that this condition was one of Plaintiff's alleged severe impairments at his third hearing,[2] and Plaintiff's appeal focuses in part on the ALJ's alleged failure to determine that his migraine headaches cause more than minimal work-related limitations.  ECF No. 23-2 at 1.

Sumrall applied for DIB on July 14, 2017 and SSI on July 21, 2017.  ECF No. 18-5 at 15, 22.  Both applications were denied at the agency level on September 21, 2017.  ECF No. 18-3 at 2, 4.  Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ") (ECF No. 18-4 at 12-13), and ALJ Michael S. Hertzig heard the matter on October 10, 2018.  ECF No. 18-2 at 39-98.  Sumrall appeared and testified at the hearing and was represented by counsel, Patrick Celestine.  *Id*. at 136-141.  Karen Harrison, an impartial vocational expert, appeared but did not testify at the hearing.  *Id*. at 132.  ALJ Hertzig briefly questioned Plaintiff and concluded the hearing after determining that he would need to reschedule with a medical expert.  *Id*. at 134-41. On May 8, 2019, ALJ Hertzig held the second hearing in this matter, in which Plaintiff appeared and testified and was represented by a new attorney, Ashley Atchison.  *Id*. at 99, 105.  Don Clark, an impartial medical expert and Karen Harrison, an impartial vocational expert, appeared and testified.  *Id*. at 105-28; 128-30.

On June 18, 2019, ALJ Hertzig issued a decision denying Sumrall's applications for SSI and DIB.  ECF No. 18-3 at 26-28, 29-40.  Plaintiff filed a request for review by the Appeals Council on July 20, 2019.  ECF No. 18-4 at 125.  On March 4, 2020, the Appeals Council granted the request for review under the error of law provision and vacated ALJ Hertzig's June 18, 2019 decision under the authority of 20 C.F.R. 404.977 and 416.1477.  ECF No. 18-3 at 48.  The Appeals

---

[2] *Compare* ECF No. 18-6 ¶3A at 7 (Plaintiff's Disability Report list of all physical or mental conditions that limit his ability to work, which list does not include migraines) *with* ECF No. 18-2 at 46 (transcript of October 14, 2021 hearing wherein Plaintiff's counsel lists migraines as one of Plaintiff's claimed severe medically determinable impairments).

Council remanded the case and directed the ALJ to admit treatment records that he had previously excluded from the record despite Plaintiff's representative notifying the ALJ of the outstanding records before the hearing.  *Id*. at 48-49.

On October 14, 2021, ALJ Hertzig held the remand hearing.  ECF No. 18-2 at 39-98. Plaintiff appeared and testified, and was represented by new counsel, Eva Conner.  *Id*. at 39. William Biles, M.D., an impartial medical expert, and Elizabeth Clem, an impartial vocational expert, also appeared and testified at the hearing.  *Id*.  On November 11, 2021, ALJ Hertzig issued a decision denying Sumrall's applications for SSI and DIB.  *Id*. at 14-28.

The Appeals Council denied review of the ALJ's November 21, 2021 decision on June 9, 2022, rendering the ALJ's decision the final decision of the Commissioner for purposes of this Court's review.  ECF No. 18-2 at 1-6.  Sumrall filed this action on August 10, 2022.  ECF No. 1. In accordance with this Court's Scheduling Order, as amended, Sumrall filed a motion for summary judgment on February 9, 2023, and the Commissioner filed a cross-motion for summary judgment on March 13, 2023.  ECF Nos. 23, 24.  Sumrall filed a reply brief on March 27, 2023. ECF No. 25.

## II.    **STATEMENT OF ISSUES ON APPEAL**

Sumrall identifies two issues for appeal:

1. The ALJ erred in finding Plaintiff's well-documented migraine headaches caused no more than minimal work-related limitations, resulting in an RFC finding that does not accurately reflect all his impairments and limitations.

2. The ALJ failed to properly evaluate the opinion evidence consistent with SSA authority and Fifth Circuit precedent.

ECF No. 23-2 at 1.

## III.    **ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL**

The ALJ made the following relevant findings in his ruling:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2023.

2. The claimant has not engaged in substantial gainful activity since February 17, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: IgM deficiency, degenerative disc disease of the cervical and lumbar portions of the spine, chronic lung disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) except he is able to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk a total of four hours out of an eight-hour day, and sit a total of six hours out of an eight-hour day. The claimant is precluded from climbing ladders, ropes, and scaffolds and is able to climb ramps and stairs occasionally. He is able to balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally, and reach in all directions occasionally. The claimant must avoid all exposure to pulmonary irritants and to wetness and humidity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 7, 1977 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

ECF No. 18-2 at 20-28.

IV.   **ANALYSIS**

A.   **Standard of Review**

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[3]  The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[4]

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[5]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[6]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[7]  This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[8]

The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and

---

[3] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).

[4] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).

[6] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).

[7] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

[8] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).

examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[9]

To be considered disabled and eligible for SSI,[10] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[11]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12]  To qualify as a disability, the impairment must be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[13]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[14]  Thus, to be considered disabled and eligible for benefits,[15] the Claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[16]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[17]  "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant

---

[9] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).

[10] The relevant law and regulations governing claims for disability insurance benefits and SSI are identical.  *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

[11] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[12] 42 U.S.C. § 423(d)(3).

[13] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[14] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).

[15] The relevant law and regulations governing claims for DIB and supplemental security income are identical.  *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

[16] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[17] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[18]  The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[19]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[20]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits.  At step 3, the ALJ must identify every Listing that could apply to the claimant.[21]  However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected.[22]  With respect to a given Listing, a claimant's substantial rights are affected where the claimant "would appear to have met [his] burden of demonstrating that [he] meets the Listing requirements" for a given Listing.[23]

### B.  Factual Background

Plaintiff testified that he was 41-years old (now 45) with a high school education and one year of college.  ECF No. 18-2 at 136.  His job history includes work as a material handler, selector,

---

[18] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[19] *Id.* at 448.

[20] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[21] *Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).

[22] *Mays v. Bowen*, 837 F.2d 1362, 1362–63 (5th Cir. 1988).

[23] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (stating claimant bears burden at step three to demonstrate that he meets a given Listing).

termite technician, and stocker. *Id*. at 127. Plaintiff stopped working full-time in February of 2017 and alleges a February 17, 2017 onset date, though he did work part-time as a restaurant line cook for five months in 2019. *Id*. at 45, 51, 77.

### i. First Hearing

At his first hearing on October 10, 2018, Plaintiff testified that pain and breathing difficulties prevented him from returning to work. *Id*. at 139. After briefly questioning Sumrall, ALJ Hertzig concluded the hearing, indicating it would be rescheduled with a medical expert. *Id*. at 141.

### ii. Second Hearing

On May 8, 2019, the ALJ held a second hearing on Sumrall's case. ECF No. 18-2 at 99. Plaintiff participated and was represented by counsel. *Id*. Medical expert Don Clark, M.D., and vocational expert Karen Harrison also attended and testified. *Id*. ALJ Hertzig declined to admit additional exhibits submitted "late or at the last minute" but did admit some additional records submitted after the 2018 hearing. *Id*. at 104. Dr. Clark was then called to testify, and Plaintiff's counsel raised no objection to his qualifications or his ability to testify. *Id*. at 105-07. Dr. Clark noted Plaintiff's medical history and complaints of pain, but concluded that the medical evidence reviewed did not indicate that Plaintiff met any listing. *Id*. at 112, 115, 118.

Vocational expert ("VE") Karen Harrison then testified at the hearing. *Id*. at 127. Plaintiff's counsel raised no objections to her qualifications or ability to testify. *Id*. The VE characterized Plaintiff's former work as a material handler as DOT reference 922.867-058, strength level medium, SVP: 2 and his work as a termite technician as DOT reference 383.364-010, strength level medium, SVP: 3. *Id*. at 128. The ALJ then posed a hypothetical of a younger individual with at least a high school diploma and Plaintiff's past relevant work who can engage

in light exertion and must avoid even moderate exposure to fumes, odors, dust, gases and poor ventilation and can occasionally climb ladders ropes or scaffolds, frequently climb ramps or stairs, and must avoid all exposure to moving machinery and unprotected heights.  The VE indicated that such an individual could not perform Plaintiff's past relevant work, but could work as a dining room attendant (DOT 311.677-010, light strength, SVP: 2, 106,435 nationwide), price marker (DOT 209.587-034, light, SVP: 2, 250,361 nationwide), office clerk (DOT 209.667-014, light, SVP: 2, 213,561 nationwide).  *Id.* at 129.  Upon questioning from Plaintiff's counsel, the VE confirmed that a person who was off task more than 15% of the time would be unable to do the identified jobs.  *Id.* at 130.  The VE also confirmed that an individual who would be absent for three or more times a month due to illnesses beyond his control would not be able to maintain employment.  *Id.*

ALJ Hertzig issued an unfavorable decision on June 18, 2019, which decision Plaintiff appealed on the basis of the ALJ's refusal to admit and consider certain treatment records.  ECF No. 18-3 at 26-40, 48-49.  The Appeals Council granted the request for review, vacated the June 18, 2019 decision, and remanded the case to ALJ Hertzig for another hearing that included consideration of the records previously disregarded and issuance of a new decision.  *Id.* at 48-49.

### iii.    Third Hearing

ALJ Hertzig held the third hearing in this matter on October 14, 2021.  ECF No. 18-2 at 39.  The ALJ confirmed that Claimant did not allege any listing of impairment was met or equaled.  *Id.* at 43-44.  Claimant's counsel advised that Claimant alleged residual lung disease/mild diaphragmatic dysfunction, chronic pain, thoracic radiculopathy, shortness of breath/asthma/COPD, spondylosis of the lumbosacral region post-fusion surgery, IgM deficiency, chronic migraines, bilateral carpal tunnel syndrome, arthritis of the knees and writs, recurrent

abdominal pain, esophagitis, duodenitis, acute pancreatitis, non-alcoholic fatty liver disease, glaucoma, and major depressive disorder, noting that the carpal tunnel and eye issues arose after the alleged onset date. ECF No. 18-2 at 45-47. Plaintiff testified that he worked four-hour shifts for about ten hours a week at Cracker Barrel making salads for five months (August 2019 to January 2020) since the second hearing, but stopped because it was hurting his back and he was "falling out on the floor" and taking too many breaks. *Id.* at 51, 58. When asked to describe a typical day, Sumrall testified that he rests for most of the day, does crossword puzzles, and watches TV in one-to-two hour increments with thirty-minute breaks in between to move around. *Id.* at 55. After ALJ Hertzig questioned Plaintiff, his attorney asked him about some of his health conditions, including his migraines. *Id.* 60-61. Plaintiff indicated that his lung and back problems had both worsened after surgery. *Id.* at 58-60. Plaintiff also endorsed experiencing migraines two to three times per week, which are caused by "tomato sauce and anything red." *Id.* at 60, 71. He takes Imitrex, which "knocks out the migraines," but feels "like a brick on [his] head," nauseates him, and forces him to lie down for multiple hours. *Id.* Plaintiff clarified that Imitrex fixes the migraines but leaves him with side effects that prevent him from working or driving due to dizziness and nausea. *Id.* Sumrall also takes Topamax for migraines. *Id.* at 71. Plaintiff indicated that he has had migraines since he got a concussion at age twelve, and though they are better now, he still gets them once or twice a week. *Id.* at 73.

a. Medical Expert Testimony

Independent Medical Expert William Biles, M.D., also testified at the hearing. *Id.* at 76. Dr. Biles opined that Sumrall's chronic lung disease is a severe impairment and Plaintiff also has cervical and lumbar disc disease as well as immune deficiency. *Id.* Dr. Biles did not, however, believe Plaintiff's migraines or sleep apnea qualified as severe. *Id.* Dr. Biles also testified that

10

Plaintiff's conditions did not meet or equal the listings for chronic respiratory disorders, disorders of the skeletal spine, or immune deficiency disorders. *Id*. The ME later indicated that, although there is some evidence of obstructive disease in Sumrall's lungs, he still has 91% lung capacity, and no medical evidence would explain the shortness of breath after five minutes of showering or exertion that Plaintiff earlier described. *Id*. at 79. Altogether, Dr. Biles indicated that Plaintiff should be limited to lifting 10 pounds frequently and 20 pounds occasionally, sitting for six hours in an eight hour workday and combined standing and walking for four hours a day, and occasional stair climbing, balancing, stooping, kneeling, crouching, crawling, and reaching. *Id*. at 80. Dr. Biles further opined that Sumrall has no manipulative limitations, but his work setting should exclude pulmonary irritants, wet and humid environments, and he should never climb ladders, ropes, or scaffolds. *Id*.

Upon questioning by Plaintiff's counsel, Dr. Biles confirmed that there are subjective and objective components to reduced range of motion. *Id*. at 81. The ME also confirmed that immunoglobulin treatments may result in one day of fatigue afterwards, but usually clear up fairly quickly. *Id.* at 81-82. Dr. Biles confirmed that, in his expert opinion, only Plaintiff's chronic lung disease, cervical and lumbar disc disease, and immune deficiency constitute severe impairments. *Id*. In response to counsel asking whether the ME thought the opinions of Plaintiff's treating physicians Dr. Macieski and Dr. Phelps were at least reasonable, Dr. Biles testified that, while he based his opinion on the record evidence and may have reached different conclusions than the treating doctors, their opinions were likely reasonable. *Id*. at 83-88.

b.   Vocational Expert Testimony

Vocational expert Elizabeth Clem also testified at the October 14, 2021 hearing. Plaintiff's counsel raised no objection to Ms. Clem's qualifications. ECF No. 18-2 at 89-90. Clem classified

Plaintiff's work as a material handler as a store laborer as DOT reference 922.687-058 and his work as a termite technician as DOT reference 383.364-010. *Id.* at 90-92.

In exploring available work in the national economy, the ALJ posed a hypothetical based on an individual of the same age, education, and work experience who is limited to lifting and/or carrying 20 pounds occasionally, standing and/or walking four hours total out of an eight hour work day, can never climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl, and reach, and must avoid all exposure to pulmonary irritants and to wetness and humidity. *Id.* at 92-93. Clem confirmed that such an individual would be precluded from Plaintiff's past work, but could perform other occupations at the sedentary level, including work as a surveillance monitor (sedentary, SVP: 2, 6,700 nationally), call-out operator (sedentary, SVP: 2, 5,700 nationally), telephone marketer (sedentary, SVP: 3, 115,000 jobs nationally), dispatcher (sedentary, SVP: 4, 40,000 nationally). *Id.* at 93-95. Altering the hypothetical, the ALJ asked what the effect of two absences per month would have on the same individual's ability to maintain work, and the VE testified that consistent absences twice a month or more would eventually lead to elimination of the job. *Id.* at 95-96. Clem also testified that the individual in the original hypothetical would likely lose his job eventually if he were to either not report to work or have to leave work early at least one day a week or month. *Id.* Further, the VE indicated that if the individual were able to engage in the activities listed in the hypothetical only two days a week, the job would eventually be eliminated. *Id.*

Plaintiff's counsel then questioned Clem, first asking if an individual who would be unable to maintain attention or concentration during simple-work related tasks for 25% of the day or greater could maintain competitive employment, and the VE indicated such an individual could not. *Id.* Clem also testified that an individual who would need to take breaks in excess of regular

lunch and normal work breaks for 15 minutes every hour would not be able to maintain competitive employment.  *Id*. at 97.

### C.  **Medical Evidence**

I have reviewed the medical records and the ALJ's summary of the medical evidence.  ECF Nos. 18-2 at 17-28; 18-7—18-14; 19—19-14.  The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

### D.  **Plaintiff's Appeal**

At step 1, the ALJ determined that Sumrall meets the insured status requirements through September 30, 2023 and that he has not engaged in substantial gainful activity since February 17, 2017.[24]  At step 2, the ALJ found severe impairments of IgM deficiency, degenerative disc disease of the cervical and lumbar portions of the spine, and chronic lung disease (20 CFR §§ 404.1520(c) and 416.920(c)) that significantly limit the ability to perform basic work activities.[25]  At step 3, ALJ Hertzig found that, considering all of Plaintiff's medically determinable impairments, he did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment.[26]

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1467(b) and 416.967(b) with certain specified additional limitations.[27]  At step 4, ALJ Hertzig determined that Plaintiff is unable to perform past relevant work as a material handler (DOT 922.687-058) or termite technician (DOT 383.364-020), as that work requires performance of work-related activities

---

[24] ECF No. 18-2 at 20.
[25] *Id*. at 20-21.
[26] *Id*. at 21-22.
[27] *Id*. at 22-26.

precluded by his RFC.[28]  At step 5, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff could perform other work available in significant numbers in the national economy.[29]

Plaintiff objects to the ALJ's RFC determination, claiming that the ALJ's error (at step 2) in finding his "well-documented migraine headaches" caused no more than minimal work-related limitations resulted in an RFC finding that "does not accurately reflect all his impairments and limitations." ECF No. 23-2 at 1.  Plaintiff also asserts that the ALJ failed to properly evaluate the opinion evidence consistent with SSA authority and Fifth Circuit precedent. *Id*.

### i.  Assignment of Error One: Effect of Migraine Severity Determination on RFC

Plaintiff argues that the ALJ improperly determined that his migraine headaches were non-severe at step 2, which created a ripple effect that tainted the other steps in the ALJ's analysis.[30] He argues that the ALJ should have considered migraine headaches in crafting the residual functional capacity ("RFC") because the migraines have more than a *de minimis* effect on Plaintiff's ability to work, and the ALJ's finding otherwise constituted an "unreasonable reading of the record before him."[31]

Initially, the court notes that its role on review is not to determine the "reasonable[ness]" of the ALJ's "reading" of the record, but rather to ensure that the ALJ's conclusion is based on substantial evidence and application of the proper legal standards.  Indeed, the fact that the court might have reached a different conclusion is of no moment when there is substantial evidence to support the ALJ's determination.[32]

---

[28] *Id*. at 26.
[29] *Id*. at 27-28.
[30] ECF No. 23-2 at 1, 4-12.
[31] *Id.* at 5.
[32] *Dubose v. Mathews*, 545 F.2d 975, 977 (5th Cir. 1977) (citations omitted).

At step 2, the claimant must prove his impairment is severe.[33]  The Fifth Circuit "defines 'severe impairment' for purposes of step two in the negative: '[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"[34]  Step two requires only a *de minimis* showing by a claimant.[35] The Fifth Circuit applies a presumption that "the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [5th Circuit caselaw] or another [authority] of the same effect."[36]  In ALJ Hertzig's written findings, he stated the aforementioned Fifth Circuit definition of severe impairment ("slight abnormality . . . ").[37]  Thus, the undersigned does not assume that the ALJ applied an incorrect standard for the step two severity requirement.

In determining the severity of Plaintiff's migraines, the ALJ considered the entire record, including the testimony of independent medical expert Dr. Biles, who reviewed every source of medical evidence available at the time of the October 14, 2021 hearing (i.e., Medical Record Exhibit Nos.  1F-50F).[38]  After his review, the ALJ found that Plaintiff's migraines are "non-severe because they are no more than slight abnormalities having such a minimal effect on the claimant that they would not be expected to interfere with his ability to perform work related-activities.[39]

---

[33] *Silvio v. Saul*, No. 20-381, 2021 WL 4498991, at **2. 4 (M.D. La. Aug. 18, 2021) (citing 20 C.F.R. § 404.1520(a)(4)).

[34] *Jeansonne v. Saul*, 855 F. App'x 193, 196 (5th Cir. 2021) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

[35] *Jeansonne*, 855 F. App'x at 196 (citing *Salmond*, 892 F.3d at 817).

[36] *Id*. (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)) (alteration in brackets).

[37] ECF No. 18-2 at 20.

[38] Plaintiff submitted one additional medical record after the hearing, which pertained to his treatment for lower back pain and is irrelevant to Plaintiff's assignment of error regarding the severity of his migraine headaches.  *See* ECF Nos. 18-2 at 80 (wherein Dr. Biles confirms that he has reviewed through Exhibit 50F) and 19-14 at 128-137 (Exhibit 51F).

[39] ECF No. 18-2 at 20.

Substantial evidence in the record supports the ALJ's conclusion that Sumrall's migraines were slight abnormalities that would not be expected to interfere with his ability to work. First, Sumrall himself testified at the October 14, 2021 hearing that the medication he takes for his migraine headaches "knocks out the migraines" and "fix[es]" the migraine problems, though the medication causes other side effects.[40] Sumrall also agreed with the ALJ that his headaches were "getting better."[41] Further, Sumrall disclosed that he has experienced migraines since he was 12-years-old, which contradicts his claim that these headaches constitute severe impairments that rendered him unable to work beginning only in 2017.[42] In addition to Plaintiff's testimony, medical expert Dr. Biles testified, after reviewing medical record exhibits 1F-50F, that Sumrall's migraines did not constitute severe impairments.[43] ALJ Hertzig noted and relied on this opinion in making the step two severity determination.[44] In addition, neither of the two treating physicians (Dr. Kelsey Phelps and Dr. Kaitlinn Macieski) on whom Plaintiff relies even mentions migraine headaches in their reports, much less identifies them as impairments.[45] Finally, other medical records indicate self-reported improvement of migraines with the use of medication.[46]

Additionally, as the Administration correctly notes, impairments controlled with medication are not severe.[47] Here, Plaintiff's testimony and the treatment records reflect that his migraines are well controlled with medication. While Plaintiff's migraine medications cause side

---

[40] *Id.* at 60; *see also id.* at 23 (ALJ noting Plaintiff's testimony regarding the positive effect of Imitrex on his migraines).

[41] *Id.* at 73.

[42] *Id.*

[43] *Id.* at 76.

[44] *Id.* at 20.

[45] *See* ECF No. 18-7 at 2934 (Dr. Phelps' report); and 19-9 at 2-3 (Dr. Macieski's report).

[46] *See, e.g.,* ECF No. 50F at 14 ("Patient feels he is doing well on Topamax and does not want to increase medication dose or change it"), 19 ("He states the Topamax has been very helpful. He has been taking the Imitrex as needed.") 20 ("Patient states his headaches are well controlled with having less than 1-2 per week. He is happy with this and does not want to make any adjustments to his medication.").

[47] ECF No. 24-1 (citing *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)).

effects that allegedly impact Plaintiff's ability to work, the ALJ properly considered Plaintiff's testimony regarding the side effects these medications as required under the regulations.[48] However, the ALJ determined that Plaintiff's testimony about the *extent* of his symptoms lacked credibility due to the "embellishment and exaggeration reflected in [Plaintiff's] testimony."[49] This court owes "considerable deference" to the credibility evaluation of the ALJ,[50] as "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"[51] The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required.[52] Here, ALJ Hertzig explicitly referenced Plaintiff's migraines and the side effects of his migraine medications in his opinion,[53] ultimately concluding that Plaintiff's exaggerations reduced the overall reliability of his statements, further noting that Plaintiff's complaints of extreme limitations are not reflected in his treatment notes.[54]  Accordingly, Plaintiff did not carry his burden to prove that his migraines were severe at step 2 of the sequential analysis.  The fact that Plaintiff disagrees with the ALJ's conclusion does not render the decision improper or baseless.  Because substantial evidence shows that Sumrall's migraine headaches do not

---

[48] *See* 20 C.F.R. § 404.1529(c)(3)(iv)) (The Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [ ] pain or other symptoms.'"). *Compare with Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999).  In *Crowley*, the Fifth Circuit reversed and remanded the district court's decision affirming the Commissioner's finding that claimant was not disabled where the ALJ's decision stated that claimant took medication for his health conditions and "reported no adverse side-effects" despite claimant's hearing testimony about the various side effects of his prescribed medications.  *Id*. at 199.  Here, ALJ Hertzig acknowledged Plaintiff's testimony about the side effects of his migraine medication but determined that the treatment notes did not reflect the extreme nature of the side effects and Plaintiff's testimony was unreliable due to his frequent embellishments unsupported by medical evidence.

[49] ECF No. 18-2 at 25.

[50] *McKnight v. Astrue*, 340 F. Appx. 176, 181 (5th Cir. 2009); *Bedford v. Astrue*, 236 F. Appx. 957, 962 (5th Cir. 2007).

[51] *Spruill v. Astrue*, 299 F. Appx. 356, 358 (5th Cir.2008) (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)).

[52] *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 & n. 8 (5th Cir.2000) (citing *Falco*, 27 F.3d at 163); *Godbolt v. Apfel*, No. 98–1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (finding ALJ's explanation of reasons for rejecting claimant's complaints of pain sufficient under Fifth Circuit law).

[53] *See* ECF No. 18-2 at 23.

[54] *Id*. at 24.

significantly affect his ability to work, the undersigned also finds no error in the ALJ's residual functional capacity determination.

While social security rulings are not binding on the courts, they do provide guidance on what should be considered for a claimant's RFC.[55]  Social Security Ruling 96-8p instructs that "all of the relevant evidence in the case record" should be considered for the RFC determination, and "[t]he adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that were not 'severe.'"[56]  As the Fifth Circuit recently noted, however, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work related activities*."[57]  As previously stated, substantial evidence supports a finding that Sumrall's migraine limitations do not significantly impact his ability to work.  This finding was based, *inter alia*, on the opinion of a medical expert who reviewed all medical evidence in the record involving migraines, and concluded they were not severe impairments.  An ALJ may rely on a medical expert to assess the severity of a claimant's impairments,[58] and should not substitute his lay opinion for the medical opinion of experts.[59]  ALJ Hertzig rightfully did not do so here.  Therefore, the undersign determines that the ALJ did not err in declining to consider Sumrall's migraine headaches in crafting his RFC.

## ii.    <u>Assignment of Error Two: Evaluation of Medical Opinion Evidence</u>

Plaintiff next argues that the ALJ failed to properly evaluate the opinion evidence consistent with SSA authority and Fifth Circuit precedent.[60]  Specifically, Plaintiff takes issue with the ALJ's finding that Dr. Phelps' opinion was not persuasive because the ALJ did not summarize

---

[55] *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).
[56] Social Security Ruling 96-8p, 1996 WL 374184, at *5 (July 2, 1996).
[57] *Id*. (emphasis added).
[58] *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011).
[59] *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).
[60] ECF No. 23-2 at 1, 12-21.

or discuss any evidence of record from before 2019 even though Dr. Phelps offered her opinion in 2017.[61]  In support of this argument, Plaintiff summarizes evidence from the record that he asserts is consistent with and supportive of Dr. Phelps' opinion.  *See* ECF No. 23-2 at 15-20.

###### a. <u>Proper Evaluation of Medical Opinions</u>

Plaintiff's claims were filed on July 21, 2017.[62]  Accordingly, Plaintiff's claims are governed by 20 C.F.R. § 404.1520c,[63] which provides that "ALJs are no longer required to give controlling weight to a treating physician's opinion."[64]  Instead, the ALJ must consider a set of factors in determining "what weight, if any, to give a medical opinion."[65]  Supportability and consistency are the "most important factors" considered when determining the persuasiveness of a medical source's opinions or prior administrative medical findings.[66]  Only if an ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent must the ALJ articulate the other most persuasive factors espoused in 20 C.F.R. § 1520c(c).[67]

The supportability factor hinges on relevance; "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the [opinion or finding] will be."[68]  Similarly, when assessing consistency, which is the other "most important" factor, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with

---

[61] *Id*. at 20.
[62] *See* ECF No. 18-5 at 15, 22.
[63] *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520c).
[64] *Id.*; *see also Winston v. Berryhill*, 755 F. App'x. 395, 402 n.4 (5th Cir. 2018) (noting that the SSA has "changed its regulations so that ALJs are no longer required to assign each medical opinion a weight").
[65] *Webster*, 19 F.4th at 719 (citing  20 C.F.R. § 404.1520c).
[66] 20 C.F.R. § 404.1520c; *see also Stuckey v. Comm'r of Soc. Sec.*, No. 21-200, 2022 WL 4534963 at *1 (M.D. La. Sept. 28, 2022).
[67] 20 C.F.R. § 1520c(b)3.
[68] 20 C.F.R. § 404.1520c(c)(1).

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the [opinion or finding] will be."[69]

The other factors in the persuasiveness analysis include relationship with the claimant (length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and nature of examining relationship) and specialization.[70]   The "examining relationship" subfactor, instead of directing ALJs to give "more weight" to the medical opinion of an examining source than that of a non-examiner, now advises that a medical source "*may* have a better understanding" of a claimant's impairments if that provider examines the claimant than if the medical source "only reviews evidence in [the claimant's] folder."[71]  This multi-factor analysis "enables courts to focus on 'the content of the evidence [rather] than on the source.'"[72]

### b.  ALJ Hertzig Properly Assessed Dr. Phelps' Opinion

After determining that impartial medical expert Dr. Biles' opinion was highly persuasive, the ALJ articulated his reasons for finding Dr. Phelps' opinion on Plaintiff's physical limitations not persuasive, considering the supportability and consistency of Dr. Phelps' opinion.[73]  Prior to finding Dr. Phelps' physical assessment not persuasive, the ALJ summarized the record for approximately four pages (ECF No. 18-2 at 20-25).  In assessing Dr. Phelps' opinions specifically, ALJ Hertzig first noted that Dr. Phelps' opinion was provided on a "'Physical Assessment' form," presumedly as opposed to a narrative report or detailed testimony such as that given by Dr. Biles.[74]  Next, the ALJ articulated that the physical limitations assessed by Dr. Phelps were not supported by objective medical findings nor consistent with the evidence of the record, which "shows

---

[69] 20 C.F.R. § 404.1520c(c)(2).
[70] *Id*. at 20 C.F.R. § 404.1520c.
[71] *Id*. at 20 C.F.R. § 404.1520c(c)(1).
[72] *Webster,* 19 F.4th at 719 (quoting 82 Fed. Reg. 5853 (Jan. 18, 2017)).
[73] ECF No. 18-2 at 25-26.
[74] *Id.* at 25.

consistently unremarkable pulmonary, cardiovascular, musculoskeletal, and neurological exams."[75]

Plaintiff's argument that the ALJ's finding was improper because he "did not summarize or discuss any evidence of record before 2019" is without merit.[76]  As explained above, an ALJ is "is not required to explain all the evidence in the record," and  "[s]imply because a matter is not referenced in the opinion does not mean the ALJ failed to rely on the evidence in making his determination."[77]  ALJ Hertzig's decision to prefer Dr. Biles' opinion over that of Dr. Phelps' was both based on substantial evidence and without legal error.

## V.    CONCLUSION

ALJ Hertzig did not err in finding Plaintiff's migraine headaches are not severe impairments or reaching the RFC determination.  Further, the ALJ properly evaluated Dr. Phelps' opinion in accordance with 20 C.F.R. § 1520c.  The ALJ applied the appropriate legal standards and substantial evidence, including medical documentation that Plaintiff's migraine headaches are controlled with medication, supports his findings.  This Court will not reweigh the evidence to produce a different outcome.

## VI.    RECOMMENDATION

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 23) be **DENIED**, the Commissioner's Cross-Motion for Summary Judgment (ECF No. 24) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE.**

---

[75] *Id*. at 26 (citing ECF No. 18-10 at 490- 95, 2019 progress notes from Our Lady of the Angels noting, *inter alia*, that Plaintiff "reports that over all [sic] he is doing well.").
[76] ECF No. 23-2 at 20.
[77] *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. Aug. 13, 2004) (citations omitted).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[78]

New Orleans, Louisiana, this 9th day of June, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[78] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).